CARROLL versus PATHKILLER.

QUESTIONS IN THIS CASE.

Whether a clerk, after certifying a record, can prove
it incomplete.

The competency of an administrator to carry into ef-
fect a will, found after letters granted.

As to the construction of the act of 1823, on the sub-
ject of the testimony of Indians, &c.

Proof of the interest of a witness in the event of a
suit.

Proof of a will by an Indian, as between Indians.

As to forcible acts in detinue; can they effect title?

Damages in the action of detinue.

1. A transcript of a record of the Orphans' Court, properly au-
thenticated, cannot be rejected as evidence, on the testimony
of the clerk of that court, that such transcript is incomplete.

2. Where an order of the Orphans' Court directed an adminis-
trator to carry a will into effect, (found after the grant of let-
ters,)---it was held, that a transcript of such order was admis-
sible in evidence; it not appearing that any executor was ap-
pointed by the will; and the order remaining unreversed.

3. That class of persons embraced by the act of 1823,* are, in
civil suits, capable of being witnesses, only for and against
persons of the same class: and are incompetent witnesses, in
any case whatever, where a white person is a party.

4. A will properly admitted to probate, cannot be rejected as evi-
dence in a suit between an Indian and white man, merely be-
cause the will had been proved, by the testimony of an Indian
witness---it appearing, that at the time the will was proved,
all who were entitled to objections against the will, were In-
dians.

*Aikin's Digest 452, §9.

5. A party objecting to the introduction of a witness, has a right to show that he has an interest in the event of the suit; and the rejection of testimony to that end, is error.

6. And this, notwithstanding that the witness, (after such rejection,) on his *voire dire,* disclaims interest.

7. That a party *forcibly* took property out of the possession of the plaintiff, cannot affect his right to recover the property, in an action of detinue.

8. In detinue, damages to the extent of the value of the hire of a slave, are recoverable from the time of the demand.

This action was detinue, in St. Clair Circuit Court, and was brought by the defendant in error, a Cherokee Indian, for the recovery of a slave. The defendant in the action went to trial, on the general issue, and an understanding, that any matter should be given in evidence, amounting to a special plea in bar; and a verdict and judgment were rendered for the plaintiff.

A bill of exceptions was taken, in the progress of the trial, which disclosed the following facts, to wit: That the plaintiff, on her part, produced, in evidence, a transcript, duly certified, as full and complete, of a record from the Orphans' Court of St. Clair County, showing sundry orders of that Court, in relation to the estate of Peggy Pathkiller, as administered by one Patrick; by which it was disclosed, that said administrator had filed his vouchers, and obtained his release from said administration: and further, that an order had been passed, directing the said administrator to carry into effect, a will of the said Peggy, which had been produced since the grant of letters to Patrick.

To the reading of this transcript as testimony, the defendant objected; and he offered to prove, by the clerk of the Orphans' Court, that there were other orders, in relation to that administration, of file, in

the office of said Court: which objection the Court overruled; and the testimony was permitted to be read, and that of the celrk excluded.

The plaintiff then offered in evidence, a writing, purporting to be the last will and testament of Peggy Pathkiller, to which John Ridge was the subscribing witness; and which contained a certificate of the clerk of the Orphans' Court, that the will had been regularly admitted to probate. By this will, it was shown that the slave, the subject of controversy, had been bequeathed to the plaintiff in the action.

The defendant objected to the evidence of the will, and, to sustain his objection, proposed showing that Ridge, on whose testimony the will had been admitted to probate, was a Cherokee Indian of the whole blood: but the Court rejected this evidence also.

It was proved that the slave, to recover whom this action was brought, had been forcibly taken out of the plaintiff's possession, by the defendant; and in reference to that fact, the Court charged, that if the plaintiff had possession, and the title was in another, yet if the defendant took with force out of plaintiff's possession, she was entitled to a recovery.

The defendant proposed proving, by the evidence of sundry Cherokee Indians, that the slave belonged to the estate of one Canoe Dragger, a native Cherokee Indian, on whose estate the defendant had administered, and who was the son of Pathkiller, the king, the husband of Peggy; and the Court rejected such proof.

The plaintiff then offered one Childress as a witness, to establish the value of the slave; but who was objected to on the ground of interest: and the

3 v. P. 36

defendant desired to submit proof to that effect : but the Court rejected this latter proof ; and the witness after being sworn on his *voire dire,* gave testimony.

The Court charged the jury, that hire from the time of the demand, was the proper criterion of damages.

Exceptions and writ of error to this Court.

*Mr. Parsons* for the plaintiff in error, and *Mr. McClung* for the defendant.

HOPKINS, J.—This was an action of detinue for a slave, in which the defendant in error, who is a Cherokee Indian, was the plaintiff. The plea of the defendant, who is a white man, was the general issue, with leave, given by an agreement between the parties, to offer any matter as evidence, which would constitute a good special plea in bar. The verdict was in favor of the plaintiff in the action, and a proper judgment was rendered upon it.

The plaintiff claimed the slave, as a bequest, made to her, in the will of her mother, who was also a Cherokee Indian. A part of the proof offered by her, and which the Court admitted, is a transcript of a record of the Orphans' Court of St. Clair County, which shows that Court made a final settlement of the accounts of one George W. Patrick, as the administrator of the mother of the plaintiff, after due notice of the time when the settlement would be made, had been given to the heirs of the mother.

The transcript also contains an order, which states that the will of the mother had been produced, after the grant of letters of administration, upon her es-

tate; and directs the administrator to carry the will into effect.

The certificate of the clerk of the Court states, that the transcript is a full, true and complete copy of all orders and decrees made by the Court, touching the settlement and distribution of the estate of the mother.

It was proved, that in the same month, in which the last order of the Court was made, the administrator delivered the slave to the plaintiff. Against the objection of the defendant in the action the transcript was admitted by the Court, as evidence. The defendant offered to prove by the Clerk of the Orphans Court, that there were other orders relating to the administration, of record in that Court, and asked leave for the clerk to amend the transcript, so as to state in it what the other orders were. To the admission of the transcript as evidence—the rejection of the testimony of the clerk, and the denial of the leave to amend the transcript, the defendant excepted.

That the evidence of the clerk was incompetent, is a proposition too clear to need illustration; and we think it plain, that the right of the plaintiff to the proof which the transcript afforded, could not be affected by the offer of the defendant to show that it was incomplete, and to have its deficiencies supplied by the clerk. The proof which was offered of its imperfection, was incompetent; and without evidence that it was defective, no amendment was necessary. If the transcript were incomplete, a full one might have been obtained by the defendant, authenticated as this is.

The transcript was admissible evidence, because it does not appear that an executor was appointed by

the will, and the order of the Orphans' Court, which is unreversed, directed the administrator to carry the will into effect; and is entitled to the effect of making him administrator, with the will annexed. The administrator acted in obedience to the order; and the effect of it would not be different, if an executor had been appointed by the will, who did not obtain letters testamentary.

It is shown, by the exceptions which the defendant took to the opinions of the Court, that the will of the mother of the plaintiff, in which the bequest of the slave was made to her, was admitted as evidence, upon the certificate of the clerk of the County Court of the proper County, that it had been admitted to probate in that Court. That one John Ridge was the only subscribing witness to the will; and that the Court rejected the evidence which the defendant offered, to show that Ridge was a Cherokee Indian.

The defendant, to show his claim to the slave, proved, that before he took the slave from the possession of the plaintiff he had obtained a grant of letters of administration upon the estate of one Canoe Dragger, a Cherokee Indian, and a son of the husband of the testatrix, who survived her husband; and offered, also, to prove, by witnesses, who were Cherokee Indians, that the slave belonged to his intestate, at the time of his death, and had been in his possession long before; but the Court rejected their testimony.

The rejection of the last mentioned evidence makes it necessary to construe a statute of the State, which enacts, "that all negroes, mulattoes, Indians, and all persons of mixed blood, descended from negro or In-

dian ancestors, to the third generation inclusive, though one ancestor of each generation, may have been a white person, whether bond or free, shall be taken and deemed to be incapable in law, to be witnesses in any case, whatsoever, except for and against each other." The construction must either allow the persons described in the statute, to be witnesses in any case, in which either party is one of such persons, or it must restrict their competency to cases, in which both the parties are persons of the description contained in the act. The testimony of such persons, against a party who was white, would be a palpable violation of the act: and the injustice of permitting one who was white, to maintain his action or defence, upon the evidence of such persons, against the other party, who was either an Indian, mulatto, negro, or of mixed blood, and had no right to snch testimony, could not be endured, and was not intended, we think, by the framers of the statute.

We are of opinion, they are capable only of being witnesses for persons of the classes mentioned in the statute, and against persons of the same classes; and are incompetent witnesses in any case, in which a white person is a party. Such, we think, is the meaning of the act.

When such persons are prosecuted for offences against the State, any one of either of the classes, would be a competent witness, under the statute.

In suits between individuals, the acts of both parties form the subject of investigation—and, to admit the testimony of such persons, either for or against the party, who was a white person, would violate the statute, which makes them capable of being witnesses, only when they are offered as such, for or

against persons of the classes to which they belong. But in prosecutions by the State, no inquiry into any act of the State is involved. The charge only against the person accused is to be examined.

Upon a charge of the State, against any such person of an offence, he has a right to the testimony of a person of either of the classes; and such evidence, against him, is competent. If it be in support of the charge, it does not relate to any act of the State; and, if it tend to disprove the accusation, it has no connection with any thing the State has done.— Therefore, whether for or against the person accused, it is for him and against him only.

The Court properly rejected the evidence of the Indians. The suit was against the defendant, as an individual, and no judgment could be rendered against him, as an administrator. But, if the suit had been against him, as administrator, the rule of evidence would not be different.

If the claims of his intestate can be established by the testimony of Indians only, it is not impracticable to have an Indian representative, for whom they would be competent witnesses against Indians. It sometimes happens, that a claim belonging to the estate of a white person, who has died, can be proved only by the administrator; and, in such a case, if the administrator do not restore his competency, by resigning his office, there is no other alternative than to lose the claim, should an action upon it be defended.

The will which was admitted as evidence, was proved by Ridge, an Indian, and, upon his evidence, admitted to probate, at a time when all persons, who had a right to object to the probate, were Indians.—

That the will was made, was properly proved at the time for making that inquiry. That Ridge would not have been a competent witness, had he been produced upon the trial, against the defendant, has no more effect upon the question, than the incompetency of a white person, if one had proved the will, from a conviction of an infamous offence, between the probate and the trial, would have had.— The Court, therefore, did not err, in admitting the will, as evidence, or rejecting the Indians, as witnesses.

But the defendant objected to one of the plaintiff's witnesses, and offered to prove, that he was interested in the event of the suit. The Court refused to hear the testimony, to show his interest. and permitted the witness to give evidence.

After the refusal of the Court to hear the defendant's proof of the interest of the witness, he was sworn upon his *voire dire,* and stated that he had none in the event of the suit. The defendant had a right to prove, in the mode he proposed, the interest of the witness; and the Court erred, in denying it.

It was proved by the plaintiff, that the defendant forcibly took the possession of the slave from her; and the Court instructed the jury, that if they believed, from the evidence, that the slave was taken from the plaintiff, by force, that she had a right to recover the slave or its value—although the title to the slave, might be in the defendant.

The owner of a chattel has a right to take it from the possession of another, if he can do so peaceably. Should he act forcibly, in the exercise of his right of re-caption, he would transgress the law; and might, in the proper mode, be made to suffer the

consequence : but it would not affect his right to the property, or entitle him from whom the possession had been thus taken, to recover what did not belong to him.    There is error in the instruction.a

<sup>a</sup>4John.158

The other instruction of the Court, that the plaintiff was entitled to recover, as damages, the value of the hire of the slave, from the time when she had demanded the possession, is correct.

For the errors which have been mentioned, the judgment is reversed and the cause remanded.