Argued September 20, affirmed November 13, 1928.

# COLUMBIA RIVER DOOR CO. *v.* E. D. TIMMS ET AL.

(271 Pac. 607.)

For appellant there was a brief over the name of *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. E. B. Seabrook.*

For respondent there was a brief over the name of *Messrs. Perkins & Bailey,* with an oral argument by *Mr. J. O. Bailey.*

COSHOW, J.—It is not necessary for us to determine what the rights of plaintiff would have been prior to the enactment in this state of Negotiable Instruments Law. Plaintiff refers the court to 3 R. C. L., page 881, Section 66, note 15:

"That the omission to insert in an instrument the name of a payee is not a feature or a defect which affects negotiability seems to be well settled by authority. The effect of the omission to name a payee is to invest any *bona fide* holder with the authority to fill the blank left for that purpose by the drawer or maker."

Accepting this quotation as authority cited by the plaintiff, it must follow that the note in question is governed by Or. L., Section 7806. This conclusion is supported by the exhaustive opinion written by Mr. Justice HARRIS in *Simpson* v. *First Nat. Bank,* 94 Or. 147, 158, and following (185 Pac. 913). Said Section 7806 was cited in that opinion, it then being Section 5847, L. O. L. This also seems to be the rule in other jurisdictions: *Cache Valley Commission Co.* v. *Genter Sales Co.,* 63 Utah, 574 (228 Pac. 203). We quote first headnote:

"Under Comp. Laws 1917, § 4043, plaintiff, with knowledge thereof, having accepted note in incomplete condition, was bound to know that it was completed in accordance with maker's intention before being clothed with right to enforce payment."

*Vander Ploeg* v. *Van Zuuk,* 135 Iowa, 350 (112 N. W. 807, 124 Am. St. Rep. 275, 13 L. R. A. (N. S.) 491). We quote from the last case cited from page 495 of 13 L. R. A. (N. S.):

"The conclusion which we reach is perhaps different from what it would have been had the negotiable instruments act not been passed. * *

"But we must take the negotiable instruments act as it is written, and, while the general purpose was to preserve the existing law so far as it was uniform, yet in many respects in which there was a conflict or doubt under the authorities the language of the statute lays down rules which are not to be ignored

simply because in some respects a change in the law is effected.''

A large list of authorities is embodied in the opinion from which the last quotation was taken. This opinion also cited the following language taken from the case of *Herdman* v. *Wheeler*, [1902] 1 K. B. (Eng.) 361:

''We have been very reluctant to come to the conclusion that the judgment in favor of the defendant in this case was right, because it appears dangerous even to cast any doubt upon a payee's right to recover when he has taken a bill or note complete and regular on the face of it, honestly and for value; but, after carefully considering the matter, we have come to the conclusion that we should be unfairly straining the words if we did not hold that 'negotiated,' in its proviso at the end of the 20th section, meant transferred by one holder to another. It is to be observed that the bills of exchange act, in § 2 * * , defines 'issue' as meaning 'the first delivery of a bill or note, complete in form, to a person who takes it as holder * * .' There is therefore a technical word defined and used in the act to mean that which * * (the person intrusted with the completion and delivery of the instrument) did here, and the appropriate words to have used in the proviso to § 20, if it had been intended to include this case, would have been, 'if such instrument, after completion, is issued or negotiated to a holder in due course.' Those are not the words; and, although we think that the present case might possibly have been decided in the plaintiff's favor before the bills of exchange act was passed, we think that we cannot consistently with the meaning of 'issue' and 'negotiate' in the act say that the present case is covered by the words used in the proviso.''

The act referred to as bill of exchange act in the last opinion quoted from is substantially the same

as our Negotiable Instruments Act. The proviso is found in said Section 7806 and is as follows:

"In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time; * * ."

■ It will be seen from these quotations that even before the enactment of the Negotiable Instruments Law the holder of a note not completed when delivered is bound by the conditions under which it was issued. Such a note is not negotiable until the name of a payee has been inserted. The party who receives the note in the incomplete state receives it subject to all equities. Plaintiff received the note before the name of the payee was inserted in the blank provided for that purpose. Plaintiff was thereby notified that it must inquire upon what conditions the note was signed by defendant Timms. In other words, plaintiff was put upon inquiry and cannot be a holder of the note in due course. The note was not negotiated to plaintiff under the doctrine of *Ploeg* v. *Van Zuuk, supra,* and the authorities therein cited. The note in plaintiff's hand is subject to any defenses defendant Timms may have: *Hartington Nat. Bank* v. *Breslin,* 88 Neb. 47 (128 N. W. 659, Ann. Cas. 1912B, 1008, 31 L. R. A. (N. S.) 130, 132). After citing Section 14 of the original Negotiable Instruments Law, which is said Section 7806 in our statute, the opinion in the last case cited reads as follows:

"Within the meaning of this language, defendant became a party to the note 'prior to its completion,' and therefore, in order that it may be enforced against him, the blank 'must be filled up strictly in accordance with the authority given.' "

It seems to be held without exception that since the enactment of the Negotiable Instruments Law negotiable paper issued in an incomplete condition is controlled by that law and particularly by Section 14 thereof, which is identical with Section 7806, Or. L. While the incompleted note is not negotiable, it becomes negotiable as soon as completed.

■ We have read sufficient of the evidence to be convinced beyond a question of doubt that there was sufficient evidence to support the findings of the learned Circuit Court. In fact, defendant Timms testified that he signed the note as security for the purpose of enabling his co-defendant to borrow money from a certain firm, to wit: Rasmussen & Co.; that the space for the name of the payee was not filled because he did not then know whether the name should be made payable to J. P. Rasmussen or his firm, Rasmussen & Co. The evidence is positive on the part of said Timms that he would not have signed the note in favor of Rasmussen & Co. or anyone else, except on the condition that he was induced to sign the note involved in this litigation. McDonald, manager of defendant Western Lumber & Door Co., represented to defendant Timms that he could borrow the money from Rasmussen or Rasmussen & Co. and pay the same by Rasmussen & Co. retaining 25 per cent of the invoice price of all material sold to it by said Western Lumber & Door Co. It appears that Rasmussen & Co. had purchased considerable material from defendant Western Lumber & Door Co. Such an arrangement would be security for defendant Timms who signed the note for the accommodation of his co-defendant, which was in financial trouble. Defendant Western Lumber & Door Co. manufacturing doors and sashes and selling them

to its customer Rasmussen & Co. might well have been able to have continued business by receiving 75 per cent of the invoice price of the material sold to Rasmussen & Co. It was represented to defendant Timms that his co-defendant had other large customers who were purchasing material continuously and that defendant Western Lumber & Door Co. could continue business by permitting 25 per cent of the sales to Rasmussen & Co. to be applied to the note.

■ The pleadings themselves show plaintiff did not fill in the blank provided for the name of the payee for about fourteen months after the note was issued. Plaintiff's name as payee was not inserted until after defendant Timms informed plaintiff of the conditions upon which he had executed the note. Plaintiff is in no situation, therefore, to receive the benefits of a *bona fide* holder nor is defendant Timms estopped under the law from relying on his defense that said note was delivered to plaintiff without authority and contrary to the conditions under which he signed it. Plaintiff did not comply with the law in filling the blank within a reasonable time: *Paschke* v. *Stoller*, 189 Wis. 348 (207 Pac. 704). In the case last cited the plaintiff held the notes about 14 months. The facts are very similar to the facts in the case at bar. The court concluded its opinion with the following language:

"Here it (the name of the payee) was not filled in according to authority nor within a reasonable time. For the reasons stated, the defendant was liable on the note only to the bank, and such liability has been met by payment."

That case directly holds that plaintiff as owner could not recover because her name was not inserted

in the space for that purpose within a reasonable time. Plaintiff is not a holder in due course. It is not an indorsee. It did not fill the blank "strictly according to the authority given," nor "within a reasonable time." If plaintiff had purchased the note after it had been completed a different question would be presented.

Judgment is affirmed.                    AFFIRMED.

BEAN, J., absent.

ROSSMAN, J., did not participate.