154 So.2d 47

**W. L. JONES**

v.

**FRYE AND ANDERS EQUIPMENT COMPANY.**

7 Div. 713.

Court of Appeals of Alabama.

May 28, 1963.

Dempsey & Hardegree, Ashland, for appellee.

J. J. Cockrell, Birmingham, and Huel M. Love, Talladega, for appellant.

CATES, Judge.

Jones, having been assessed a total of $797.96 by a jury in a detinue action against him, appeals to us. There is no cross appeal.

The trial judge, in summing up the case in his oral charge, stated:

"Now, gentlemen, this is what we commonly call, as has been stated to you, a detinue suit; and ordinarily they are short. Most of the time they do not amount to too much. The complaint in this case simply says that the plaintiff claims of the defendant the following personal property, to-wit, and describes it. This International Motor truck with the value of the hire or use thereof during its detention, from, to-wit, the 6 day of November, 1960. Now, that is the complaint. The burden is on the plaintiff to reasonably satisfy you of the truth of that complaint to be entitled to recover a judgment at your hands. Now, under the pleading in this case, gentlemen of the jury, there has been gotten embodied about everything that could be gotten into a case. The defendant in this case not only pleads the general issue, says he is not indebted, he doesn't owe it, but he also pleads recoupment, and he also pleads usury, and he also suggests that this jury ascertain and determine the amount of indebtedness that the defendant owes to the plaintiff, if anything, in this case, and when all of that is entered by way of pleading, it is incumbent upon the court to say something to you about those different things. * * * "

Jones claims he bought two International Harvester trucks, both from Frye and Anders. Frye and Anders contended that Jones bought the first truck from a stranger, a Mr. Lowery, who reputedly went to Texas leaving an unpaid paper on this "first" truck.

Jones quit paying on the second truck and Frye and Anders brought detinue for it. Jones pleaded their breach of warranty of title to the first truck. Also, he pled the paper he signed to pay for the second truck was infected with usury.

We consider the evidence read as a whole would support either theory in fact. Some consideration of the legal effect of the papers might have altered the jury's view of the facts had appropriate written requests for charging the jury been tendered to the trial judge under Code 1940, T. 7, § 273.

Neither party submitted special requests in writing for further instruction. Both counsel accepted the court's general charge. Thus it became the law of the case.

On appeal in a civil case, the office of an assignment of error is as is a pleading at nisi prius. And the bringing forward of propositions of law and of argument using these propositions upon the pertinent facts correspond to the function of evidence below. Thus assignment serves as allegata and argument as probata.

Taking the argument of Jones's brief, we find these contentions:

1. Mr. Frye, president of the plaintiff corporation, was the superior of Jones in education, business, especially in dealing in motor vehicles and had the confidence of Jones.

2. Mr. Jones's payments on the paper for the first truck, plus interest to trial, plus

interim payments,[1] total more than the original amount called for in the paper covering the second truck.

3. Exhibit "A" which Jones undisputedly signed and delivered to Frye and Anders with respect to the first truck contains the following covenant:

" * * * and I hereby agree that the title thereto and to all repairs, replacements of and accessories to said property shall remain in the payee until this note shall have been fully paid in money; * * * "

This covenant Jones contends charged Frye and Anders with warranting title to the first truck. This first truck was repossessed by American Discount Company.

Thus contentions 2 and 3 are enfolded together as facets of a claim of set-off.

This claim in turn rests on the major premise that Jones bought the first truck from Frye and Anders.

For the first of these contentions, appellant cites Verner v. Mosely, 221 Ala. 36, 127 So. 527. That case, however, does not apply to the instant situation, for the reason that Mr. Verner was already in a confidential relationship with his client before he purchased the real estate which was the subject of the bill in equity to set the conveyance aside.

Here, there is no such showing of a confidential relationship such as might arise from agency; rather we find that Jones was, at the most, a rather regular customer though irregular in paying.

The note for the first truck was negotiated by Frye and Anders to a bank and for aught that appears Jones continued to pay the bank. Indeed, on the note submitted in evidence for the first truck, there is stamped a statement that this note was renewed on April 30, 1960. This stamp appears to be that of the bank in question.

With respect to the claim of set-off, we note that several of the items, notably the $59.40 and the $60.12, which Jones, in his brief, claims should be credited against payments on the first truck, ·were paid and noted on the back of the note for the second truck.

█ We allude to this because of the well known principle that, unless a debtor (or the law) particularly earmarks a payment, the creditor is entitled to credit it to the account which is most favorable to the creditor. Brown v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50.

As to the warranty of title, the evidence disclosed a bill of sale from Frye and Anders to Jones for the second truck. This bill of sale was separate from the paper given with respect to the financing of the unpaid balance of its purchase price.

█ But, as to the first truck, *no such bill or other document of sale* came to light. Thus, we are confronted with a record which has credible evidence which would show that the sale of the first truck took place from the stranger to Jones. Jones, in turn, simultaneously obtained funds for payment to the stranger, or the equivalent (a Studebaker truck), from Frye and Anders. Under this view, Jones gave Frye and Anders a note and chattel mortgage on this truck without any sale of it going through the hands of Frye and Anders. This tendency of evidence we must accept because the verdict rests upon it.

The instruments given to secure the payments with respect to the two trucks are identical as far as the printed form thereof is concerned. The trial judge, in his charge to the jury, did not denominate the paper as a chattel mortgage, retention title contract or conditional sales agreement.

In Jones's favor it must be noted that the margin ·of each of these papers carried

---

1. These are given in Jones's brief as: $59.40 on 9–18–60; $60.12 on 11–6–60; $25.00 for parts; $40.00; $10.00 for parts; and $125.00 down payment.

running perpendicularly the expression in bold face type, "Alabama-Conditional Sale Note."

The text of the instrument, however, calls for a deficiency in the event of a foreclosure. See Bern v. Rosen, 259 Ala. 292, 66 So.2d 711, and Webb v. Litz, 39 Ala.App. 443, 102 So.2d 915. In the absence of a written bill of sale, we are unwilling to consider this instrument alone as setting up a conditional sale or retention title agreement so as to make, as a matter of law, Frye and Anders a warrantor of the title to the first truck.

True it is the second paragraph of the note, after the promissory form, begins, "This note is given for the balance of the purchase price of: One International Motor Truck," etc. However, the instrument fails to say from whom the promisor has purchased the truck. Accordingly, we cannot construe it as binding Frye and Anders to an express warranty of title. Indeed, a third party lender often aspires to the status of a purchase money mortgagee.

In the calculation of interest, Mr. Frye admitted that $52.20 had been added to the original principal indebtedness and the cost of insurance, and then the combined aggregate was divided into the number of payments expressed in the note for the second truck.

Under the provisions of Code 1940, T. 10, § 61, a form of discounted interest is available to a lender.

The jury brought in a verdict of finding the balance of the mortgage debt to be $797.96. Inasmuch as there was testimony that $200.00 was a reasonable attorney's fee for bringing the suit in the circuit court in the hypothesized circumstances, we cannot ascribe error to this total amount. See Glover v. Huddleston, 39 Ala.App. 261, 105 So.2d 148.

We consider the judgment below is due to be

Affirmed.