217 So.2d 83

**WEST POINT WHOLESALE GROCERY COMPANY**

v.

George S. **BULLS.**

**5 Div. 683.**

Court of Appeals of Alabama.

Dec. 10, 1968.

Russell, Raymon & Russell, Tuskegee, for appellant.

Gray & Seay, Montgomery, for appellee.

CATES, Judge.

A jury found for defendant Bulls in a suit for $500. West Point had sued him in two counts: one, for $500 due by account, and two, for $500 on a check Bulls drew payable to ABC Supermarket and by the latter endorsed to West Point.

I.

The check sued on (Plaintiff's Exhibit 1) was one which bounced. It was

for $500 drawn by Bulls on the Alabama Exchange Bank, payable to order of ABC Supermarket [1] under date of April 23, 1963. ABC Supermarket endorsed it (without restriction or limitation) over to West Point Wholesale Grocery Company.

West Point Wholesale Grocery Company in turn endorsed the check back to Alabama Exchange Bank for collection. The bank returned it unpaid.

Appellant could here sue either (or both) the drawer or the endorser. An election would not be a waiver of its cause of action against the other. Rather, only the amount recovered in the first judgment would mitigate the amount collectible on the second.

█ West Point, on receiving Bull's check endorsed by ABC Supermarket, gave ABC Supermarket only a tentative credit on its account with the Supermarket. We see nothing, however, therein which should relieve Bulls of his obligation on the check.

> "* * * unless a debtor (or the law) particularly earmarks a payment, the creditor is entitled to credit it to the account which is most favorable to the creditor. Brown v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50."—Jones v. Frye and Anders Equipment Co., 42 Ala.App. 102, 154 So.2d 47.

█ The check was not a mere warrant or non-negotiable order telling the bank to pay only ABC Supermarket at the banking house.[2] Under the negotiable instruments law, the words "pay to the order of" import negotiability. Notice of dishonor (Code 1940, T. 39, § 90) was given Bulls but not in writing until August, 1964. This was not material. Deal v. Atlantic Coast Line R.R. Co., 225 Ala. 533, 144 So. 81, 86 A.L.R. 455.

1. Record 17 shows that the parties stipulated that ABC Supermarket was a corporation. No point was made below that Bulls was alter ego; hence, no question of going behind the corporate veil seems to have been put to the trial judge in any ruling sought from him.

## II.

### EXHIBIT C

█ On May 2, 1963, Bulls went to the Alabama Exchange Bank. There he "bought" a check (Defendant's Exhibit C). In the testimony this check was called a "cashier's check" though actually it was drawn on a New York bank by the Alabama Exchange Bank.

West Point Wholesale Grocery Company, or order, was the payee of this check (Exhibit C). Above the printed masthead which reads "Alabama Exchange Bank" appeared the typed notation "REMITTER A. B. C. SUPER MARKET."

This instrument (Exhibit C) was endorsed by West Point Wholesale Grocery Company and was paid. The Grocery Company on May 6, 1963, credited the ABC Supermarket account with $500.

The evidence is in dispute as to West Point Wholesale Grocery Company receiving a letter from Bulls purporting to modify the notation on Exhibit C. Bulls testified that (a) the Alabama Exchange Bank gave him a copy of its check to West Point Wholesale Grocery Company, Exhibit C; (b) he sent the check by mail to West Point Wholesale Grocery Company; and (c) (on date not given) he wrote the Company to the effect that the check, Exhibit C, was in payment of his personal check on which the instant action was brought.

In view of the form of payment *first*, Exhibit C being an absolute order by the bank on a New York bank to pay West Point Wholesale Grocery Company; and, *second* with the notation as to ABC Supermarket having remitted it, West Point Wholesale Grocery Company was at liberty

2. As can be the case of an English "cheque" crossed "& Co." See Beutel, Brannon's Negotiable Instrument Law (6th Ed.), pp. 1250, et seq.

to ignore any letter from Bulls. Certainly, the letter was never shown to have served as an allonge with a release by reason of endorsement of the check. See Clark v. Thompson, 194 Ala. 504, 69 So. 925(2). Bulls was not privy to Exhibit C.

### III.

### EXHIBIT B

Exhibit C was purchased by Bulls with his own check payable to Alabama Exchange Bank, Exhibit B. This check came into evidence over objection. The trial judge conceded that alone it was not relevant to the issue of payment.

Appellee then offered both Exhibits B and C, to which West Point Wholesale Grocery Company objected, because Exhibit C was "a remittance by or for ABC Supermarket."

This objection should have been sustained. Bulls by his own testimony delivered the New York check by mailing it himself. Before he delivered it, he had a right to have asked the Alabama Exchange Bank to alter the notation as to who was the remitter.

■ Moreover, Bulls's own check (Exhibit B) with its notation (which never reached West Point Wholesale Grocery Company) was not only self-serving but also res inter alios acta.[3] Hence, it was inadmissible. Wharton v. Thomason, 78 Ala. 45.

No point as to an attempted variation of the terms of the New York check, Exhibit C, by extrinsic evidence, i. e., Bulls's personal check, Exhibit B, and the letter which he testified that he sent to explain the purpose of Exhibit C was raised.

For the error in admitting Exhibit B, we find it necessary to reverse the judgment below and remand the cause for new trial.

Reversed and remanded.

3. Defendant's Exhibit B is only explanatory of his Exhibit C which was express-

ly sent for "ABC Supermarket." Defendant's Exhibit D was not restricted by

ABC Supermarket's endorsement to any account; hence, West Point was entitled to apply it most favorably to itself as a

payment by ABC Supermarket. Exhibit E bears no endorsement by West Point.